IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | No. 1:21-CR-49 CMH |
| | ) | |
| v. | ) | |
| | ) | |
| MATTHEW J. ERAUSQUIN, | ) | |
| a/k/a MATT HAMMOND | ) | |
| | ) | |
| Defendant. | ) | |

**POSITION OF THE UNITED STATES AS TO SENTENCING**

The United States has reviewed the Probation Office's presentence report in this matter and agrees Defendant has a total offense level of 43 with a criminal history category of I, resulting in a guideline range of life in prison. Pursuant to the terms of the plea agreement and a consideration of the Section 3553(a) factors, the United States seeks a sentence of 15 years' incarceration and ten years of supervised release. The United States also seeks restitution.

**A. NATURE AND CIRCUMSTANCES OF THE OFFENSE**

From June 2017 through September 2019, Defendant Matthew Erausquin was a frequent commercial sex customer of six underage girls from three different high schools in Northern Virginia. Defendant, a partner of a law firm, used his wealth and prestige to entice the young girls for his perverse sexual pleasure. As a form of enticement, he showered the young girls with cash, gifts, drugs, and offers to take them on trips via a private plane. He routinely sought threesome sexual encounters with the girls and told them he would pay more money if they brought a friend for such encounters. While sexually exploiting four of the girls, Defendant secretly recorded the abuse on multiple occasions and saved the videos. Defendant continued to pay three of the same minors for sex after they turned 18.

### I. Initial Report to Law Enforcement Regarding The Commercial Sexual Exploitation of High School Girls

Law enforcement's investigation into Defendant began after receiving a report from a concerned high school student regarding her friend, Victim I. According to the concerned student, Victim I had a mental breakdown and was hospitalized subsequent to her exploitation by an older man who was "rich and powerful." Through the initial report by the concerned student, law enforcement learned that the man was paying up to $1,000 to engage in threesome sexual activity with multiple girls, including Victim I. He was further showering the girls with expensive gifts, such as purses from the high-end retail store Tiffany's & Co. The initial report also revealed that the man was presenting himself as a "sugar daddy" to the young girls, which ultimately lured multiple girls to his residence for purposes of sexual exploitation. Later investigation revealed that the man was the Defendant Matthew Erausquin.

### II. Commercial Sexual Exploitation of Minor Victim J and Minor Victim G

Law enforcement's investigation revealed that Defendant first began sexually exploiting Victim J and Victim G when they were both 16 years old. (*See* **Exhibit A** and **B**, photos of minors, Filed Under Seal). Around June 2017, Defendant met Victim J on the website SeekingArrangements.com, a website that advertised itself as a place where "sugar daddies" could meet "sugar babies." He sent an Uber car ride to transport both Victim J and Victim G to Clarendon, Virginia. He took both girls out to a nearby restaurant for lunch. Thereafter, he paid both girls for sex. He continued to pay both girls for sex on multiple occasions. He frequently sent an Uber car ride to transport them to his residence in Clarendon. At times, the girls drove also themselves. He paid them between $700 to $900 each for every sexual encounter. He also provided the girls with drugs, including edible marijuana.

Defendant secretly recorded some of the sexual exploitation encounters with Victim J and Victim G. The videos show the youthful appearance and demeanor of the girls, and the conversation captured over audio further underscores their youth. For example, in the video labeled Escapade-3, Defendant is heard asking Victim J and Victim G if their parents were "all in their business" and if their parents always wanted to know what they were doing. Victim G replied in the affirmative. Defendant replied that is a good reason not to go to a local college and to go away for school instead. Additional conversation revealed Defendant talking about his older iPhone. Victim G commented that she was waiting for her mom to update her phone. After sexually penetrating both victims, Defendant later told the victims he could not climax because he was on antibiotics. Defendant is also heard on video discussing various drugs and showed the girls different types of THC products that he had. He informed both girls they could take various products. At the end of the video, Defendant is heard telling the victims, "Alright, you got weed, chocolate, water, money, you're all set."

Investigation revealed that Victim G moved out of state at the end of her junior year in July 2018. Victim G was age 17 at that point. In the meantime, Defendant continued to pay underage Victim J for sex. In December 2018, Victim G was interested in flying back to Virginia to visit her family and Victim J for the holidays. At that point, Victim G was 18 years old. Defendant agreed to purchase her plane ticket. To purchase the plane ticket, Victim G provided him her date of birth. Defendant did not express any anger or shock when Victim G provided her date of birth. While coordinating travel, Defendant also sent a picture of himself holding money in his hand to Victim G and stated "I went to the bank to stock up." Around this same time, Defendant told Victim J he always kind of knew their real ages and liked it.

While Victim G was in Virginia for the holidays, she did not immediately go and see Defendant. Defendant became angry and expressed his anger to Victim J that Victim G was not responding to his messages. Defendant sent several messages to Victim J stating he was going to cancel Victim G's return flight. After learning of the threat, Victim G went to Erausquin's residence. While there, he had sex with her and paid her several hundred dollars. Thereafter, he did not cancel her return flight.

### III. Commercial Sexual Exploitation of Minor Victim S and Minor Victim G.B.

In July 2017, Victim S, age 16, was enticed into going to Defendant's residence after learning about the large amounts of money her friends Victim J and G were receiving from him. (*See* **Exhibit C**, photo of S, filed under seal). On or about July 22, 2017, Victims J, G, and S were invited to Defendant's residence. Through initial interviews with Victim S, she did not want to disclose the extent of the sexual activity that Defendant engaged in with her. Through interviews with Victims J and G, they both reported that Defendant penetrated Victim S vaginally and that at one point he was really rough with her, resulting in Victim J reaching over to touch her hand as comfort while Defendant aggressively penetrated her.

Forensic analysis of Defendant's digital devices showed that Defendant secretly recorded the encounter. The video footage shows Defendant vaginally penetrating Victim S and at times, he is penetrating her roughly. The video further shows him directing the three girls on what sexual actions he wanted them to do to him and to each other. Defendant did not wear a condom. Witness statements revealed that Defendant paid each girl $800 cash for the four-way sexual exploitation.

Victim G.B., age 16, was enticed into Defendant's apartment after learning about the large amount of money he gave to Victim S. On August 4, 2017, Defendant sent an Uber to pick

up both Victims S and G.B. and transported them to his residence for purposes of commercial sex. Victim G.B., who is very petite, had silver orthodontic braces on her top and bottom teeth at this point in time. (*See* **Exhibit D**, photo of G.B., filed under seal). Defendant again secretly recorded the sexual exploitation. In the footage, Defendant and the victims talk about how Victim J got grounded by her mom as punishment for her mom finding Victim J smoking marijuana in her bedroom. The video further depicts Defendant engaging in vaginal sexual intercourse with both Victims S and G.B. He is not wearing a condom. The video shows Defendant having a difficult time fully penetrating G.B. due to her small size. Defendant asked if she had had sex before. Victim G.B. responded she had and added, "I'm just small." Victim statements revealed that after the sexual exploitation, Defendant paid both girls $800 each. He then ordered an Uber to transport them to Tyson's Mall.

Victim S further informed law enforcement that she and Defendant communicated over Snapchat. Victim S would tell Defendant how school was going. She further stated she told Defendant her real age and reported that Erausquin did not care. She eventually blocked Defendant from SnapChat because he was sending her pictures of him laying naked in bed and asking what she was wearing. She reported discomfort and fear that her classmates would see an older male sending her "Snaps" while in class.

Victim G.B. reported telling Defendant her real age and attempting to obtain money from him without having sex with him. She reported telling Defendant that she and Victim S would go to the police if he did not pay them money. Defendant told G.B. it would be stupid to try to extort him because having sex with a minor was not that big of a deal compared to extortion. He threatened to sue her and made her believe she would be the one to get in trouble, not him.

In the meantime, Defendant continued to pay Victim J for sex while Victim J was underage. Defendant made statements to Victim J about the threats he received regarding Victims G.B. and S going to the police. Defendant told Victim J that he felt assured that Victim J would never do that to him.

### IV. Commercial Sexual Exploitation of Minor Victim I

Defendant began paying Victim G.B. for sex again once G.B. was a senior in high school and had turned 18 years old. Defendant, seeking more threesome sexual encounters, learned about Victim I through G.B. Victim I was a junior in high school and 16 years old. (*See* **Exhibit E,** photo of I, filed under seal). On April 9th and April 12th, 2019, Defendant sent an Uber car ride to transport Victims I and G.B. to his residence for purposes of commercial sex. While at his residence, Defendant provided Victims I and G.B. marijuana to consume at his place. He also gave both girls purses from Tiffany & Co. After engaging in sexual intercourse with both girls without condoms, he paid each girl $500. At the conclusion of the second exploitive encounter, Defendant drove Victims I and G.B. in his Range Rover to Tyson's Mall. After dropping them off at Tyson's Mall, Victim I passed out inside a store and was transported to the hospital via ambulance.

After her discharge from the emergency room, Victim I then experienced gynecological health problems initially indicative of a STD. Victim I had a mental breakdown and was hospitalized in a psychiatric facility to stabilize her mental health.

Victim J learned of Victim I's health problems and messaged Defendant in May 2019 regarding her fears that she now was exposed to a STD. Defendant denied having a STD and sent medical lab results to Victim J. On July 31, 2019, Victim J forwarded a message to Defendant stating that Defendant was being investigated for sex with underage girls and police had gone to

G.B.'s house to interview her. By message dated August 5, 2019, Defendant stated, in part: "None of this is worth risking my career for. I have parents in their late 70s that are relying on me to take care of them."

### V.     Commercial Sexual Exploitation of Minor Victim E

In September 2019, Defendant met Victim E on the dating website Tinder. According to Victim E, Defendant represented himself online as a blond, 18 year old male. Defendant sexually exploited Victim E in exchange for money and drugs three separate times at his residence. In one instance, he sent an uber to Victim E's high school to pick her up and transport her back to his place. Another time, Defendant drove his own car and picked her up near her school. An additional time, she drove to his place. At all times, Victim E was 17 years old, very petite, and a senior in high school. (*See* **Exhibit F**, photo of E, filed under seal).

Victim E described aggressive actions Defendant took while exploiting her. She reported Defendant threw her on his bed onto her stomach to sexually penetrate her the first time he exploited her. On a different occasion, he wanted her to wear nylon stockings and became frustrated and aggressive with her while penetrating her. During another occasion, he sought to live stream having sex with her with his laptop computer. He wanted to live stream the sexual exploitation in a chat room where other individuals were also live streaming their own sexual encounters.

While at his place, Defendant offered Victim E alcohol and drugs. During one visit, he provided her a potent form of THC that caused her to pass out at his place. When she woke up, she was naked in Defendant's bed. Thereafter, he ordered her an Uber to take her back to her car parked in the high school parking lot. During another occasion, Defendant showed her a duffel bag containing various types of drugs, including marijuana, THC wax, THC cartridges, and

psilocybin mushrooms in capsule form (a/k/a "Shrooms").

Defendant sought and obtained pictures of Victim E while she was at school. He paid her money over Paypal/Venmo for pictures of her genitals and breasts. He also encouraged her to bring a friend and told her he'd pay $1000 for a threesome encounter.

### VI.     Commercial Sexual Exploitation of Victim P.W.

Defendant met 18 year old Victim P.W. on SeekingArrangement.com in May 2019. She had just finished the school year as a senior and had recently been kicked out of her home. As part of the "arrangement," Defendant provided Victim P.W. with gifts, drugs, and cash. He also provided her an apartment. She told law enforcement, *inter alia*, that she felt that Defendant stalked her near her apartment and at the college she later attended. She stated he would show up unexpectedly at various locations where she was at, including the woods when she was out walking, parties, and her apartment lobby.

During the forensic review of Defendant's digital devices, law enforcement recovered footage off of Defendant's iPhone showing that he had placed a hidden camera in P.W.'s apartment that allowed him to watch and listen to her through a live streaming program. When Victim P.W. was shown screenshots of the surveillance footage, she identified herself, her apartment, and stated she was not aware that a camera had been placed in her apartment.

P.W. further reported Defendant was sexually attracted to preteens and would ask her to wear little girls' underwear and pigtails during sex. She told law enforcement that Defendant wanted her to watch a video of child pornography with her that involved a toddler, a preteen, and a "grandpa." She reported being very upset about the video he sought.

During the forensic review of Defendant's digital devices, law enforcement located approximately 800 images of child pornography in unallocated space on a hard drive seized from

Defendant's apartment. The images were sent to the National Center for Missing and Exploited Children ("NCMEC") and NCMEC confirmed that multiple images contained known victims of child sexual exploitation.

### VII. Commercial Sexual Exploitation of Victim M and Victim P

Around March 2020, Defendant met Victim M when she was 18 years old and a senior in high school. Defendant met her on SeekingArrangement.com. Defendant paid Victim M for sex in Virginia on two occasions. Shortly thereafter, Victim M then moved to Florida. Defendant traveled to Florida and paid to have sex with Victim M and her friend Victim P. Victim P had also recently graduated from high school.

On or about June 30, 2020, Defendant transported both Victims M and P from Florida to Virginia for purposes of commercial sex. During that trip, Defendant set up a four-some sexual encounter with an additional adult male at a hotel. Later that same night, Defendant also engaged in threesome sexual activity with the two girls at his residence. Victim P reported that Defendant woke the girls up in the middle of the night, undressed them, and demanded sex. When Victim P told Defendant she did not want to, Defendant told her "no, I want it now," and "lean over." He then proceeded to bend her over and penetrate her from behind. The next morning, Defendant transported both girls to the airport and paid each girl $1200.

Victim M reported flying from Florida to Virginia an additional time where Defendant and another male engaged in commercial sex with her. She described the sex as rough and at one point, Defendant and the other male choked her at the same time while penetrating her.

### B. HISTORY AND CHARACTERISTICS OF THE DEFENDANT

Defendant grew up in New Jersey with his mother, step-father, and a half sister. He reported a close relationship with his mother. He provided details about his relationship with his

stepfather. (*See* ¶¶ 201-203). He also reported abuse that he suffered at the hands of a cousin and a guidance counselor. (*See* ¶ 205).

Defendant attended both Catholic schools and public schools growing up. Defendant served in the United States Air Force from July 1992 to November 2009. He graduated from college in 1996 with a degree in computer science. He graduated from law school in 2002. After graduating from law school, he worked at a law firm in San Francisco for a year. Thereafter, he operated the Law Office of Matthew Erausquin from 2004 to 2007. He was then a partner at Consumer Litigation Associates from 2007 until the date of his arrest in this case.

Investigation into this matter reveals that Defendant was renting an apartment in both Clarendon, Virginia and in Miami, Florida. He was driving multiple cars, including a Range Rover, a Mercedes-Benz G550 ("a G-Wagon"), a Ferrari, and an Aston Martin. Investigation further showed he had access to and used private planes.

A review of his personal credit card statements during the time he was exploiting the victims revealed extravagant spending, including a purchase from Tiffany & Co in the amount of $20,831.41 in March of 2019 (shortly before giving Tiffany purses to Victims I and GB in April of 2019). Several financial transactions tied to his credit cards and other applications show him paying the victims for various things, including sex, an expensive camera, and nude photos/videos of the victims. The financial records show that he provided the victims varying amounts of money on numerous occasions that ranged from around $50 to $1200. Moreover, on May 7, 2019, Defendant used a credit card in the name of his employer, Consumer Litigation Associates, to pay Victim J $250.

C. **SERIOUSNESS OF THE OFFENSE, PROMOTION OF RESPECT FOR THE LAW, THE NEED TO DETER FUTURE CRIMES AND PROTECT THE PUBLIC, AND THE PROVISION OF JUST PUNISHMENT**

Sex trafficking a minor is a grave and serious offense. The damage inflicted upon girls through this form of sexual exploitation is immeasurable physically, mentally, and emotionally. Defendant used his wealth, power, and prestige to entice the victims into his grasp, all for his perverse sexual pleasure. The hurt and harm that he has caused the victims and their families cuts very deep.

A review of the family interviews and victim impact statements that have been submitted as of today's date reflect the harm that Defendant has caused. For example, Victim I's father reported to United States Probation that she has suffered from ongoing trauma as a result of Defendant. (PSR ¶ 104). He reported that Victim I previously had a rope in her car and had planned to hang herself. She entered inpatient psychiatric treatment for several weeks and has been seeing a therapist one or twice per week since her discharge. While Victim I's father stated she is now doing better, he further reported she is still not the same person she was before she met Defendant. He told U.S. Probation he "just wants his daughter back." He asked that this Court sentence Defendant "to the maximum extent possible." (PSR ¶ 104).

A review of the Victim Impact Statement submitted by G.B. discusses the pain and trauma she has endured, stating in part:

> [A]t one point I even tried to end my life, and I almost did. I didn't feel like a person anymore, I felt like an object just to be used for another person's satisfaction, just to be poked and prodded. I felt like every single part of me had been stripped away.

A review of the Victim Impact Statement submitted by Victim E provides, in part:

> I was young and naïve and was terrified to say anything to anyone out of embarrassment. I felt trapped. I felt like a horrible person. I never wanted to feel the way I did and still do now. This will continue to affect everything relationship I have with a man.
> …

11

> I can't give you a number on how many panic attacks, night terrors, and breakdowns I had, but I can tell you that I thought about it everyday, and will continue to think about it everyday.

Victim E further discusses the mandatory minimum sentence of ten years of incarceration and her view that ten years in prison is insufficient. She explains:

> Life in prison wouldn't be enough but at least it would mean that I would never have to worry about seeing his face again. If he is let out in 10 years, that will be my thought everyday until he dies. Every face that looks similar to his will scare me into panic attacks where I lose all control….

Victim E concludes her letter stating:

> I beat myself up because if I made certain decisions differently, I wouldn't have gone through what I did. I know now that this was not my fault, but everyday I fight with myself that it was. But the truth is he had money and power and took advantage of those in a vulnerable place who didn't know any better.

As for deterrence, there is a strong need to deter Defendant and others individuals similarly situated from engaging in this conduct. Defendant, representing himself as a 40-some-year-old "sugar daddy," used his wealth, power, and prestige to entice and manipulate minor girls so that he could use them as his own personal sexual objects. The victims have experienced multiple forms of mental, physical, and emotional trauma that will take years to recover from. The United States believes a sentence of 15 years' incarceration is appropriate.

## D. RESTITUTION

Restitution is mandatory under the Victims of Trafficking and Violence Protection Act of 2000, as amended (TVPA), 18 U.S.C. § 1593, the Mandatory Victims Restitution Act of 1996, as amended (MVRA), 18 U.S.C. §§ 3663A–3364, and the parties' plea agreement whereby Defendant has agreed to pay restitution to the six minor victims, along with Victims M, P, and P.W. *See also,*

*United States v. Palmer,* 643 F.3d 1060, 1066 (8th Cir. 2011); *United States v. Charles*, 895 F.3d 560, 565 (8th Cir. 2018).

Under the Trafficking Victims Protection Act, 18 U.S.C. § 1593, "the victim should be compensated for the full amount of losses, which has the same meaning as provided in 18 U.S.C. § 2259(c)(2)." *United States v. Saddler,* 789 Fed. Appx. 952, 954 (4th Cir. 2019). Pursuant Section 2259(c)(2), the "full amount of the victim's losses," includes "(A) medical services relating to physical, psychiatric, or psychological care; (B) physical and occupational therapy or rehabilitation; (C) necessary transportation, temporary housing, and child care expenses; (D) lost income; ( E) reasonable attorney's fees, as well as other costs incurred; and (F) any other relevant losses incurred by the victim."

Restitution is proper under Section 2259 to the extent the defendant's conduct proximately caused a victim's losses. *See Paroline v. United States*, 572 U.S. 434, 445-46 (2014); *United States v. Wright*, 958 F.3d 693, 696-97 (8th Cir. 2020). The Government must establish an appropriate amount of restitution by a preponderance of evidence. *Saddler,* 789 Fed.Appx. at 955. The amount of restitution need not "be proven with exactitude." *Saddler,* 789 Fed.Appx. at 955 (citing *In re Sealed Case*, 702 F.3d 59, 66 (D.C. Cir. 2012)). "[D]etermining the dollar amount of a victim's losses attributable to the defendant will often be difficult and such a determination will inevitably involve some degree of approximation, which is not fatal." *Id.* The district court should establish the amount of the victim's losses with "some reasonable certainty." *Id*.

As of today's date, four victims have submitted claims for restitution for a total amount of $221,725. (*See* PSR ¶¶ 102-106; 235). Victim E, represented by outside counsel, has submitted a claim for $36,343.20 in restitution. (*See* PSR ¶ 106). Counsel for Victim E has submitted a breakdown for the amount as follows: $6,640.20 for mental health and counseling costs already

13

incurred; $19,503.00 for future mental health and counseling; and $10,200 in attorney fees for numerous meetings and interactions with Victim E., including, but not limited to, the attorney's presence during interviews of Victim E by law enforcement during the investigative phase, interviews of Victim E by the U.S. Attorney's office during the investigative phase, and grand jury testimony. In support of the restitution request, counsel for Victim E has provided a Declaration of Victim Losses, a summary of past charges and expected expenses with therapists, along with receipts and invoices for past expenses. (*See* PSR ¶ 106).

Victim G.B., represented by outside counsel, has submitted a claim for $170,017 in restitution. (*See* PSR ¶ 103). Counsel for G.B. has submitted the breakdown for the amount as follows: $14,668 for therapy and rehab expenses already incurred; $29,349 for future therapy and rehab; $66,000 of historic lost wages and $60,000 of future lost wages. In support of the restitution request, counsel for G.B. has provided a Declaration of Victim Losses, G.B.'s Victim Impact Statement, a letter from G.B.'s therapist, a letter from G.B.'s brother; and an expert report on damages, which includes receipts for the out of pocket expenses for rehab and therapy.

As for Victim I, her father reported that she has incurred $12,135 of out of pocket expenses for mental health services from between June 2019 through December 2021, averaging $4,051 per year. (*See* PSR ¶ 104). He further informed U.S. Probation he believed his daughter would need therapy for years to come. Victim P has submitted a claim for $3,230, which consists of multiple costs to acquire and maintain an emotional support dog her mental health provider recommended, along with $300 in psychiatric visits. (*See* PSR ¶ 106).

### E. CONCLUSION

Based on the above, the United States seeks a sentence of 15 years' incarceration, ten years of supervised release, and restitution.

Respectfully submitted,

JESSICA D. ABER
UNITED STATES ATTORNEY


_____/s/_____
Maureen C. Cain
Assistant United States Attorney
Whitney Kramer
Special Assistant United States Attorney
United States Attorney's Office
2100 Jamieson Avenue
Alexandria, VA 22314
Phone: (703) 299-3892
Email: Maureen.Cain@usdoj.gov

**CERTIFICATE OF SERVICE**

I hereby certify that on this 11th day of March, 2022, I filed the foregoing with the Clerk of Court, providing notice to counsel of record.

By:    /s/ Maureen C. Cain
        Maureen C. Cain
        Assistant United States Attorney
        United States Attorney's Office
        2100 Jamieson Avenue
        Alexandria, VA 22314
        Phone: (703) 299-3892
        Email: Maureen.Cain@usdoj.gov