IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | Case No. 1:21-cr-0049 |
| v. | : | The Honorable Claude M. Hilton |
| | : | |
| MATTHEW ERAUSQUIN | : | |
| Defendant. | : | |

## DEFENSE POSITION ON SENTENCING

COMES NOW MATTHEW ERAUSQUIN, by and through Counsel, and hereby presents this Court with his position on sentencing.

On October 18, 2021, Mr. Erausquin appeared before Your Honor and accepted responsibility for his actions by pleading guilty to 6 counts of sex trafficking of a minor, in violation of 18 U.S.C. § 1591.

By statute, Mr. Erausquin is facing a mandatory minimum sentence of 10 years for each count. In accordance with Rule 11(c)(1)(B) of the Federal Rules of Criminal Procedure, the United States and Mr. Erausquin agreed to recommend that the Court impose a term of imprisonment of no less than 120 months (10 years) and no greater than 180 months (15 years). Pursuant to the terms of the plea agreement, we request the Court impose a sentence of 120 months.

A sentence of 10 years of incarceration is more than sufficient to meet all the § 3553(s) factors. We therefore respectfully request a sentence of 120 months on each count to run concurrently, with a recommendation to the Bureau of Prisons that Mr. Erausquin be

designated to Terminal Island in San Pedro, California.  This designation Is appropriate based on Matt's health issues and family ties to California.  The United States previously represented to counsel that it will have no objection to Matt's voluntary surrender at the facility to which he is designated.  We ask the Court for a surrender date on or after June 1, 2022, to permit Matt to undergo several serious medical procedures/surgeries over the next couple of months.

A separate motion in support of this recommendation will be filed with the Court's electronic filing system.  Due to the sensitive and personal information regarding Mr. Erausquin's personal background and serious medical conditions,  this pleading Is filed under seal and hand-delivered to the United States.  Counsel will endeavor to file a redacted version of this sentencing position with the Court's Pacer system upon removal of certain personal and medical information contained In this under seal filing.

I.      **Summary of Argument**

The parties reached an agreement in this case, which reads, as is relevant, that "the United States and the defense agree to recommend that the Court impose a term of imprisonment of no less than a term of 120 months and no greater than a term of 180 months."   One hundred and twenty months for a nearly 47-year-old man, who is beginning a battle with kidney cancer, has uncontrolled Crohn's disease, rheumatoid arthritis, fluid around his heart and a host of other issues, who is an honorably discharged Air Force Captain with no criminal record, and who was a respected member of the bar for 17 years is completely fair, just and is no more severe than necessary.  The parties also agreed, due to Matt's medical conditions and other factors, that he be permitted to voluntarily surrender once he is designated.

Though each of the factors referenced below are in explained in greater detail, the essential points are as follows:

- Matthew has fully and completely accepted responsibility and is absolutely remorseful.  During the pretrial phase, he attempted suicide as the guilt and pain he caused his family, and the girls became too much.  He was near death on a respirator for many days.  Through continued therapy, he has recovered and is back on track. His remorse is sincere.

- He has saved the government and the Court the time, energy, and costs associated with what would surely have been an involved and complicated prosecution.

- He has spared the victims the enormous emotional stress of a trial.

- He came into contact with most of these individuals through a website called "Seeking Arrangements", which promised him that it had verified the ages of its members, and on which the victims willingly advertised themselves on the site and represented themselves to be adults.

- This was far from a traditional 18 U.S.C. § 1591 prosecution as there were no pimps or other 3rd parties with any interest in the encounters as this Court typically sees.

- During the pretrial phase, Matthew has complied with all conditions of release reporting to pretrial, keeping a structured schedule of medical and psychological appointments and remaining drug free.

- Matthew has meaningfully and consistently engaged in out-patient therapy, meeting with Dr. ▓▓▓▓[1] for almost a full year on a weekly basis (approximately 50 appointments lasting 1-3 hours each).

- Matthew has met with and been evaluated by Dr. ▓▓▓▓[2] for many months, who has determined that he is not sexually deviant, is not antisocial, and that

---

[1] Dr. ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

[2] Dr. ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

his future prognosis is excellent. Dr. ▮'s report and evaluation is attached as Exhibit 1. We have attached Dr. ▮'s CV to his report as Exhibit 2.

- Matthew was himself the victim of repeated sexual abuse when he was a child. This abuse—perpetrated by a distant family member, as well as by a guidance counselor—had an impact on Matthew's psychological make-up and his relationships as he grew older.

- He was also physically and emotionally abused in his youth.

- As he grew older, and likely as a direct result of the abuse he suffered at a very young age, most of Matt's relationships originated almost exclusively through match-making websites such as "Seeking Arrangements". An overwhelming majority of these encounters were with adults.

- As mentioned above, this case arose after Matt responded to victim ▮'s false profile, wherein she identified herself as being an adult. ▮ then voluntarily introduced some of her friends to Matt, all of whom claimed to be at least 18 as well. The last contact with any of these Individuals In the convicted counts was two- and one-half years ago, September 2019.

- Mr. Erausquin has a host of significant medical issues, as documented at page 38 of his Amended Presentence Report. These medical conditions include:

    a. a cancerous mass on his left kidney;

    b. uncontrolled Crohn's disease in both the small and large intestine marked by polyps;

    c. rheumatoid arthritis;

    d. spinal disc issues and deterioration of the joints which will require multiple surgeries;

    e. fluid build-up around the heart;

    f. urinary obstruction; and

    g. an abnormal prostate in need of surgery. Other conditions are listed in the report.

- Due to these health issues, Matt is scheduled to undergo the following medical procedures and therefore requests that the Court permit him to voluntarily surrender to his designated facility or after June 1, 2022:

    a. spinal surgery on March 24, 2022, at the ▇▇▇▇▇▇▇▇▇▇;

    b. an MRI for the cancerous kidney mass on March 29, 2022, at ▇▇▇▇▇▇▇▇▇▇;

    c. prostate surgery on April 20, 2022, also at ▇▇▇▇▇▇▇▇▇▇, which will require an overnight stay of 1-2 days so that healing can be monitored given his immuno-suppressed state;

    d. and various examinations treatments for his Crohn's disease including a colonoscopy to evaluate the potentially cancerous polyps in his intestine, as well as the administration of intravenous medicine at a hospital, with each session lasting 3-4 hours.

- In short, Matthew will need extensive medical care while incarcerated in order to survive.

II. **Sentencing Principles**

Ten years is a lengthy and more than sufficient sentence, under both the express terms of our agreement with the Government and the factors listed in Section 3553(a).

Since *United States v. Booker,* 543 U.S. 220 (2005), the federal sentencing guidelines are not mandatory. Imposition of a sentence, or course, is not a mathematical or hypothetical exercise. Sentencing is an exercise in discretion, humanity, and justice. Here, the parties agreed to a particular range as well as voluntary surrender.

After consideration of the plea agreement, the Court then "must make an individualized assessment based upon the facts presented." *Gall v. United States,* 552 U.S. 38, 50 (2007); *United States v. Hughes,* 401 F.3d 540. 546 (4th Cir. 2005).  A district court should consider all of the § 3553(a) factors to determine whether they support the sentence requested by a party.

5

*See Gall,* 552 U.S. at 49-50.   While we do not dispute the guidelines here, we would note that even reflecting Matt's full acceptance of responsibility, the resulting range in cases such as these are always enormous and unjust, no matter the particular facts and circumstances.

The Section 3553 factors are 1) the nature and circumstances of the offense, 2) the history and characteristics of the defendant, 3) the kinds of sentences available, 4) the guideline range, 5) the need to avoid unwarranted sentencing disparities, 6) the need for restitution, 7) the need for the sentence to reflect the seriousness of the offense, promote respect for the law, provide just punishment for the offense, afford adequate deterrence, protect the public from further crimes of the defendant, and provide the defendant with adequate educational and vocational training, medical care and other treatment.  The sentencing court must consider each of these factors in imposing a sentence sufficient, but not greater than necessary to accomplish the goals of sentencing.  *See Kimbrough v. United States,* 552 U.S. 85 (2007).

Imposition of a term of imprisonment is subject to the following limitation: "the court, in determining whether to impose a term of imprisonment, and if a term of imprisonment is to be imposed, in determining the length of the term, shall consider the factors set forth in Section 3553(a) to the extent they are applicable, recognizing that imprisonment is not an appropriate means of promoting correction and rehabilitation." 18 U.S.C. Section 3582.  In short, in every case, the district court must consider the § 3553(a) factors, including the guidelines, in determining a sentence that is sufficient but not greater than necessary to meet the goals of sentencing.

III.    **Background Characteristics**

Matt is nearly 47 years old and has no criminal record, other than driving without a license in his possession 23 years ago. He has no relationship with his biological father who had █████████████████████████████████ Matt met him exactly once at his grandparents' 60th wedding anniversary.

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

To add to this - when Matt was still quite young, ███████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████
██

This abuse, which took place at ███████████████████████████, happened repeatedly and was routine over the course of approximately four years.

Matt was put ahead a grade when he was 6, and also started school early. This meant that for most of his childhood, Matt was 1-2 years younger than the other boys in his class. He was bounced back and forth between public and Christian schools, nearly every other year. In

high school, when Matt was in public school in 9th and 11th grades, his high school counselor would ███████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

██████ This took place nearly every time that Matt visited his office.

Matt was essentially a quiet and introverted kid without many friends or the ability to gain friends likely due to the dysfunctional and abusive home environment. He spent most of his childhood reading in his room or learning to use a desktop computer.

When Mr. Erausquin left home to attend college, he had just turned 17. He lived in his college dorms during the week, but on the weekends, he frequently stayed with a friend his age who was living with an older woman in her 40s. The woman then began a sexual relationship with Matt when he was 17.

He went on to earn a degree in Computer Science from Widener University while completing his officer training obligations, and was commissioned as a Second Lieutenant in 1996. While serving on active duty in the Air Force as a Communications Officer at the Pentagon, he earned his law degree by attending George Mason University Law School at night, and successfully completed the Intellectual Property Track there.

Matt was somewhat successful in his initial legal career but did not enjoy much financial success in his early life, first as a patent attorney, and then as a general practice attorney. That all changed when Matt began to practice more specialized litigation and ultimately found himself with more money than he had ever had before.

Suffice it to say that Mr. Erausquin was ill-equipped - on every level - to deal with his new-found success.  Having grown up lonely and isolated in an abusive household, Matt soon discovered that he could make friends and establish relationships by providing financial support and resources. It was a skewed vision for sure but, as Dr. ▓▓▓ has explored, it was one that sprung from his belief that no one would truly care or believe in him otherwise.  As but one example, we have attached a statement from our investigator, ▓▓▓▓▓▓▓▓▓▓▓▓▓, who took a statement from one of the many adult women Matt met on the "Seeking Arrangement" website, some of which were as old as their mid 30s.   This woman notes that Matt's relationship with her was about far more than sex, and she describes him as an authentically caring, decent person who tried his best to care for her.  See Exhibit 3 (Statement from ▓▓▓).

After Matthew was arrested in Miami, he spent several months in jail in various facilities before only finally arriving here after several months.   During these months in 23 hour a day Covid lockdown, and then in transit, his health deteriorated rapidly: his Crohn's symptoms went untreated; he lost close to 40lbs; and his back condition severely worsened.

On March 22, 2021, Matt was released on very strict conditions and he has adhered to all of them.  Over the last year or so, Matt has proven himself to be an ideal candidate for a reasonable sentence followed by supervision.  As noted above, he has been in therapy with Dr. ▓▓▓ and Dr. ▓▓▓ since his release.  He has also been cooperative with his pretrial officers, both here and in Pennsylvania; has had no contact with any of these victims; has no use of unauthorized devices; and has remained drug free.

On June 11, 2021, with trial looming, Matthew attempted suicide by overdosing. He did so because was so sorry for what he had done, both to the victims and to his mother, the only kind and decent person in his life. Matt did not wake up for five days and nearly died. After being discharged from the hospital's ICU, Matt entered an in-patient mental health facility in Pennsylvania and began to recover mentally. He has continued to receive therapy and mental health counseling and is now in a much better place, participating actively in group therapy with others at Dr. ▮▮▮▮'s office. Those connections, some of the first meaningful ones he has had in years, have proven invaluable in his recovery. He has consistently and expressed his significant remorse to counsel and advocated vigorously for a result that would not require these now college aged women to come back for trial.

Matt's statement to the Court also reflects his sincere and heartfelt remorse. He acknowledged the pain he caused to these girls, and their parents, and knows he was the adult in the case and should have known better. Matt cannot turn back the clock, but he is absolutely and sincerely remorseful about his actions. As these charges fall into the most severe tier in most states, Matt will be a convicted felon, a sex offender forever marked by sexual registration and a long period of supervision. He will never practice law again. Matt has nothing but prison time ahead of him for the foreseeable future. Mr. Erausquin is incredibly sorry, and again, he took the lead in pleading guilty in this case despite what counsel believed were very viable defenses, particularly given that this situation does not seem to be exactly what Congress envisioned when fashioning this Sex Trafficking statute and its harsh penalties.

IV.     **Seeking Arrangement**

This is an interesting website, to say the least.  It is extremely popular with millions of users throughout the world and the overwhelming majority of members are women. The website brags of accommodating modern dating by matching older, more financially successful men with mostly younger and attractive women who are looking to be paid for their company. The site boasts of its cutting-edge artificial intelligence to ferret out those posting fake ages.

In terms of this case, Matt's first contact was with ▉ who had created a fake profile- complete with fake age- and negotiated her own terms.   They met for dinner, and she brought along a friend on her own initiative.  No sex was involved at the first dinner.  The friend ▉ also lied about her age and thereafter the two girls engaged in a sexual relationship with Matt over a period of months.  Frequently, however, Matt paid for gifts and had outings with the girls which had no sexual component.  ▉ in her interviews with the police, told them that this was not just a transactional relationship.  The Government describes a situation with these women in which ▉ wanted to fly from Alaska to Virginia for the holidays, Matt bought her a first-class ticket, but then when ▉ landed and refused to return his messages, Matt mentioned canceling her return flight, as he felt he had been taken advantage of.  Noteworthy, however, is what the Government did not describe.

Just <u>8 minutes</u> after mentioning cancelling the flight, discovery in this case reveals that Matt reversed course and said that he could not bring himself to cancel the flight, and "didn't have it in him to leave her stranded."     Her friend ▉ then responds and says:

"You're really understanding, and I'm really sorry she's being such a f***ing b***, you really don't deserve this when you've only ever been good to us."   1/2/2019  6:43PM.

11

At the time ▮ ultimately met with Matt that visit, she was fully aware that her flight was no longer in jeopardy.

Matt was next introduced to ▮ - not through the site but by another girl. ▮ who met with Matt frequently, would also brag on social media and to her friends about her "Sugar Daddy" and the presents that Matt would give her.  Some of these texts are included in the presentence report at pages 19-20.  Included in these Is ▮, now an adult, instructing ▮ (a minor) that "Ur 18 today okay".  The two girls then discuss how they are "bouta be rich"  and ▮ saying she was going to make "1.5k this week holy fuck."

▮ then introduced Matt to some of *her* friends and they all became involved in the cycle of gifts, often sex but sometimes just hanging out.  Matt provided money whether sex was involved or not, in one case and without a request, taking ▮ to purchase a Leica camera for thousands of dollars since she wanted to pursue photography as a career.  Discovery shows that ▮ shortly thereafter told Matt that her home had been broken into and the camera stolen, when in reality, she had simply sold it.  ▮, who is now seeking $100,000+ for her "mental pain and suffering" and loss of past and future earnings (based on her Inability to keep employment and drug use) eventually received a court appointed criminal defense attorney and received immunity from prosecution.  Then, during the pendency of this case, she made numerous attempts to initiate "video chats" with Matt, sending him repeated messages which, at counsel's request, Ms ▮ discovered by opening said account and documenting the efforts to contact Matt.   Exhibit 4.  These messages and ▮s numerous attempts to contact and talk with Matt while this case was pending seem to contradict some of the Victim Impact information contained In the government's pleading and the presentence report relative to ▮

In short - while Matt is certainly the culprit and deservedly so, he stands ready to cooperate with the Government to take down this website—as it seems like the website perhaps does not fully live up to its self-proclaimed representations of performing full verifications of the identity of its users and only promoting adult relationships.

V.      **Psycho-Sexual Evaluation**

Matthew has been undergoing intensive therapy since his release in March of 2021 and has included approximately 50 meetings with Dr. ▬▬, driving 90-120 minutes each way from Pennsylvania to Virginia for these sessions. Matt has also been seeing Dr. ▬▬ for therapy. Dr. ▬▬ a long-time evaluator with ▬▬ is eminently qualified to provide opinions about Matt's diagnosis and his future prognosis and risk levels. In his professional opinion, Matt's early childhood abuse substantially contributed to his subsequent sexual lifestyle and interests. Dr. ▬▬ also notes that an early prescription of unduly high levels of testosterone- in combination with his abusive situation- ultimately led to a lifestyle where sex played a prominent role.

Dr. ▬▬ writes there is so much good about Matt, that he is genuinely remorseful and that he is committed to receiving treatment. Matt's risk level is essentially non-existent, and his prognosis is excellent. ▬▬ notes that any inappropriate images found on Matt's computer had been deleted and the presentence report confirms that this batch of images was found in unallocated (deleted) space. The Hopkins clinic has been designated as National Resource Site by the United States Department of Justice in part because of its successful treatment of individuals with sexual disorders. The rate of recidivism for any first-time offender at Matt's

age is incredibly small, and for those treated at Dr. ████'s clinic, arguably the gold standard program nationally, it is even lower. This program will be waiting for Matt upon his eventual release. Finally, we attach a letter from Matt's sister confirming much of the abusive situation he lived through and expressing her support. She lives close to Terminal Island.

## CONCLUSION

Ten years is enough here.

For reasons that set forth herein and as we will further discuss at Mr. Erausquin's sentencing hearing, Mr. Erausquin respectfully moves this Court for a sentence of 10 years for each count, each term of years to run concurrently with one another, yielding a total active sentence of 10 years in prison. He requests a judicial recommendation for designation to Terminal Island, and that the Court recommend to the Bureau of Prisons that it consider Matt for the maximum period of release to home confinement and/or a Residential Re-Entry Center. A sentence of 10 years in prison for this man - and for the nature of these offenses - is one that properly reflects who Matt is, his childhood, his health issues, and the nature and circumstances of the offense. This is a sufficient sentence, and anything more would be greater than necessary.

Finally, we as counsel have not received any documentation about comfort dogs purchased years later or other discovery/documentation about restitution. If we receive such documentation and can reasonably address the claims, we will address restitution at sentencing. If we are not in position to reasonably review the materials, then some discovery

and a separate hearing on the issue may be needed, given the significant amounts sought by some as reflected in the most recent Presentence Report.

Matthew Erausquin

By Counsel

_____

Edward B. MacMahon, Jr.

P.O. Box 25

107 East Washington Street

Middleburg, Virginia 20118

ebmjr@macmahon-law.com

_____

Christopher Amolsch

12005 Sunrise Valley Drive

Suite 200

Reston, Virginia 20191

703-969-2214

Chrisamolsch@yahoo.com

Bar No. 43800

_____

Frank Salvato

1203 Duke Street

15

Alexandria, Virginia 22314

703-548-5000

Bar No. 30453

Frank@Salvatolaw.com

Certificate of Service

      I hereby certify that a true copy of the foregoing was hand-delivered to the Office of the United States Attorney, 2100 Jamieson Avenue, Alexandria, Virginia 22314 on this 15th day of March 2022.

_____

Frank Salvato

1203 Duke Street

Alexandria, Virginia 22314

703-548-5000

Bar No. 30453

Frank@Salvatolaw.com